UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23mj03379 Goodman

UNITED STATES OF AMERICA

vs.

MICHAEL ANTHONY SABATINO

Defendant.
_____/

FILED BY KAN D.C.
Jul 13, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?   No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   No

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   s/ Adam C. McMichael
      _____
      Adam C. McMichael
      Assistant United States Attorney
      Fla. Bar. No.: 0772321
      500 South Australian Avenue, Suite 500
      West Palm Beach, Florida 33401
      Tel: (561) 209-1040
      Email: adam.mcmichael@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>MICHAEL ANTHONY SABATINO<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  1:23mj03379 Goodman<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 21, 2023__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) | Possession With Intent to Distribute a Controlled Substance (methamphetamine) |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jesse Ricks, Special Agent  DEA
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by __Face Time__

Date:  7/13/2023

_____
*Judge's signature*

City and state:    Miami, Florida         Hon. Jonathan Goodman, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Jesse Ricks, being first duly sworn, hereby depose and state as follows:

## AGENT BACKGROUND AND PURPOSE OF AFFIDAVIT

1. I am a Special Agent with the Drug Enforcement Administration (DEA) assigned to the West Palm Beach District Office within the DEA's Miami Field Division. As such, I am a "law enforcement Officer" of the United States within the meaning of Title 18, United States Code § 2510(7) and am empowered to conduct criminal investigations and to make arrest for offenses enumerated in Title 18, United States Code § 2516(1).

2. I have been a Special Agent with the Drug Enforcement Administration (DEA) since February 2012. I received basic training in narcotics investigations at the Justice Training Center located in Quantico, Virginia. I am currently assigned to the Miami Field Division, West Palm Beach District Office, in West Palm Beach, Florida. I have received specialized training in the means and methods used by narcotics traffickers to import and distribute narcotics, drug smuggling methods, and the concealment and laundering of proceeds from illicit drug trafficking activities. I have personally conducted and participated in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. During the course of these investigations, I have participated in search warrant executions, debriefed or participated in debriefings of defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. The aforementioned investigations resulted in the arrest and prosecution of numerous individuals for narcotics violations. Based upon my training and experience, I am familiar with the manner in which narcotics-trafficking organizations operate, including the manner in which various types of illegal drugs are cultivated, manufactured,

smuggled, distributed, or diverted, as well as methods used to finance drug transactions and launder drug proceeds. Additionally, I have received training in the use of wiretaps, telephone toll analysis, and wire intercept equipment, and have previously authored affidavits pertaining to the interception of wire and electronic communications. I have also participated in both the monitoring of wire and electronic interceptions and surveillance operations conducted in conjunction to the interception of wire and electronic interceptions and assisted by the use of electronic GPS monitoring and/or tracking devices.

3. This affidavit is made in support of a criminal complaint charging defendant MICHAEL ANTHONY SABATINO (hereinafter "SABITINO") with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii). The information contained in this affidavit is based in part on information developed by DEA Special Agents, Task Force Officers and information obtained from other law enforcement personnel. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the criminal complaint, it does not include all facts known to me or to other law enforcement officers regarding this investigation.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

Introduction and Background

4. In early June 2023, a target of an ongoing DEA investigation began cooperating with law enforcement (hereinafter referred to as the "cooperating defendant" or "CD") after he was found to be in constructive possession of approximately one pound of crystal

2

methamphetamine by local law enforcement.[1] The CD was also notified that he was also the target of a DEA investigation that is likely to result in a federal indictment related to the distribution of crystal methamphetamine. The CD cooperated with law enforcement in hopes of receiving consideration from the Court in the event he is charged for the above-mentioned conduct or the federal investigation. Law enforcement informed the CD that there were no promises or guarantees of any outcome for the CD related to a potential federal indictment.

5. The CD provided information to DEA and local law enforcement on another pound quantity methamphetamine distributor known to the CD as "Tony" and subsequently identified by investigators as Michael Anthony SABATINO. The CD provided current and past telephone numbers used by SABATINO. The CD also provided that SABATINO drove a newer model Nissan pick-up truck and that SABATINO is from Colombia. The CD identified the location of where SABATINO resides. The CD added that SABATINO has several firearms inside his residence and that he believes that SABATINO routinely carries a firearm with him, including during drug deals. The CD said that SABATINO also sells "ecstasy" (common street or slang term for MDMA or 3,4-methylenedioxymethamphetamine) and ketamine, which I know to be Schedule I and Schedule III controlled substances, respectively. The CD said that SABATINO and the CD have previously supplied each other with pounds of crystal methamphetamine on multiple occasions. The CD explained that both SABATINO and the CD have had different crystal methamphetamine suppliers in the past. A variety of factors, including the price, quality, and availability of crystal methamphetamine would determine who was the

---

[1] The CD shall be referred to herein in the masculine gender even though this may not be reflective of the CD's true gender.

supplier and who was the purchaser. The CD also said that the crystal methamphetamine transactions would usually take place at SABATINO's residence or the residence of the CD.

CD and SABATINO Signal Threads

6. As part of his cooperation, the CD consented to a search of his cellular phone. Based on the information provided by the CD and information that I observed from the CD's phone and the downloaded contents of the CD's phone, I determined the person known to the CD as "Tony" was SABATINO. As detailed later in this affidavit, my determination was later confirmed during a controlled purchase from SABATINO. Based on my investigation, it was confirmed that SABATINO was associated with the residence provided by the CD, drove a 2022 Nissan pick-up truck registered in his name and was born in Colombia. These facts corroborated the information given by the CD.

7. In addition, I have personally reviewed message threads between the CD and numbers the CD said were used by SABATINO from the Signal application in the CD's phone. Signal is a messaging application that allows users to exchange messages is a way similar to text messages and also allows user to make audio calls and video calls. The Signal application is used primarily on mobile phones. It should also be noted that the Signal application allows users to set messages to automatically delete or disappear after a certain amount of time. Signal threads show messages (that have not been deleted) and unanswered calls. Specifically, I reviewed threads with telephone number 305-204-1004, which the CD stated was an older number for SABATINO and is hereinafter referred to as "SABATINO's Older Number," and telephone number 954-508-1891, which the CD stated is the current number for SABATINO and is hereinafter referred to as "SABATINO's Current Number." I noticed that both threads have indicators or notifications that say messages were set to disappear. As such, it is likely that the

CD and SABATINO sent messages that were no longer contained in the CD's phone and as such law enforcement was unable to review.

8. The Signal thread with the SABATINO's Current Number did not contain any messages. The thread did show unanswered voice calls and the first unanswered voice call with SABATINO's Current Number was on or around December 23, 2022. The thread with the SABATINO's Older Number began on or around June 2, 2022 and the last unanswered voice call was on or around December 29, 2022. The last message exchanged between the CD and SABATINO's Older Number occurred on November 10, 2022. Based on my training and experience, I know that drug traffickers change telephone numbers to avoid detection by law enforcement. Based on my review of these Signal threads, it appears SABATINO transitioned from using SABATINO's Older Number to SABATINO's Current Number around the end of December 2022. Based on my training and experience and my knowledge from this investigation, I recognized the communications in the thread with SABATINO's Older Number to generally be discussions between two crystal methamphetamine traffickers. I also recognized communication regarding Daniel Armstrong who, along with seven other defendants, was recently sentenced in the Southern District of Florida for Conspiracy to Possess with Intent to Distribute Methamphetamine on March 23, 2023 (Case No. 22-CR-80176-Middlebrooks). The exchange went as follows:

November 9, 2022

CD:        Hey Tony,

           Did you hear the latest news about Danny?

           I was just informed 20 minutes ago

           I wanted you to know, unless you already know

5

November 10, 2022

| | | |
|---|---|---|
| CD: | | Did you get my pills? |
| CD: | | U ok? |
| SABATINO: | | Whats the news cause idk |
| SABATINO: | | And yes i got the pills |
| CD: | | Danny with the bike |
| | | Got arrested two days ago |
| SABATINO: | | What disbhe get charged for do u know |
| SABATINO: | | In Broward? |
| CD: | | No idea, someone just made a courtesy call |
| SABATINO: | | Wow thanks for letting ne know i had no idea. |
| CD: | | You told me that you know him I wanted to make sure you aware of it. |
| SABATINO: | | Yes i do and its scary cause i hd seen him prob that day or day before. I may take a few daya to leave town |

9. Based on my training and experience, I understood the above thread as follows: The CD notified SABATINO about the arrest of Armstrong ("Danny with the bike" and "Got arrested two days ago") which occurred on November 8, 2022. SABATINO confirmed that he knew Armstrong ("You told me that you know him" and "Yes i do"). SABATINO was scared that he may be arrested because he met with Armstrong that day or the day before, likely to conduct a drug transaction ("its scary cause i hd seen him prob that day or day before"). Because of his fear of arrest, SABATINO was considering leaving the area ("I may take a few daya to leave town").

6

10. Later in the thread, the CD and SABATINO made additional comments about the arrests and their crystal methamphetamine trafficking. The conversation shows in the thread as follows:

| | |
|---|---|
| CD: | Do you have on Lb I can get from you? |
| SABATINO: | I can prob pick it up let me ask |
| SABATINO: | And ill confirm that and price |
| CD: | See if we can get it for 3k or 3.1 |
| CD: | Regardless, you can stay here for as long as you want |
| CD: | Hi Tony, did you find out about the pound? |
| CD: | I need it today |
| SABATINO: | People are cautious due to the recent bust and idk if they gonna make moves today like that im still workibg on it |
| CD: | Ok tks |
| SABATINO: | The one person that did say yes wants alot more than what u prob want to pay |
| CD: | 3.2? |
| SABATINO: | Unfortunately when people get busted and supply is lost they make up for it by raising price . I dobt even want to tell you what the quote was |

11. I interpreted the above thread as follows: The CD asked SABATINO to supply one pound of crystal methamphetamine ("Do you have on Lb I can get from you?") for $3,000 United States Currency (USC) or $3,100 USC ("See if we can get it for 3k or 3.1"). SABATINO explained to the CD that crystal methamphetamine suppliers were being careful due to the recent

7

arrests of Armstrong and his co-conspirators ("People are cautious due to the recent bust"). SABATINO added that one of his suppliers would sell him a pound for a price that was abnormally high ("I dobt even want to tell you what the quote was").

12. Following this last message, the thread shows a notification or indicator that read, "Tony Columbia T set disappearing message time to 1 hour." And then another that read, "Tony Columbia T set disappearing message time to 5 minutes." There are no more messages in the thread with SABATINO's Older Number even though the thread indicates SABATINO and the CD continued to communicate using that number and Signal until around the end of December. Based on my training and experience and knowledge of this investigation, I suspect that Armstrong and SABATINO trafficked crystal methamphetamine together. SABATINO and the CD learned of Armstrong's arrest and began to fear of their own arrest, and as such SABATINO set his future messages with the CD to disappear so there would be less evidence of his drug trafficking in the future.

13. Following my review of the Signal threads, I asked the CD about the threads. The CD said the messages exchanged on and after November 9, 2022 were about Armstrong. The CD added that Armstrong supplied SABATINO with crystal methamphetamine.

14. In addition to the above-mentioned facts, I have found messages in the Signal thread between the CD and SABATINO's Older Number which, based on my training and experience, indicate that the CD and SABATINO met at the SABATINO's residence for the purposes of distributing crystal methamphetamine and or other illegal substances on several instances in the past. Those instances include: September 4, 2022; September 11, 2022; October 4, 2022; October 20, 2022; and October 26, 2023. Based on information provided by the CD and statements made by SABATINO during the controlled purchase, agents believe that

8

SABATINO's girlfriend also resides with SABATINO. Both SABATINO and his suspected girlfriend list other addresses with Florida Department of Motor Vehicles.

Controlled Purchase from SABATINO

15. On or around June 20, 2023, agents directed the CD to arrange to purchase one pound of crystal methamphetamine from SABATINO. As a result, the CD exchanged the following messages with SABATINO's Current Number:

June 20, 2023

CD: Hi Tony, its *****[2], im texting using the new number that i gave you. Let me know when i can pick-up on Lb and see if he can give you more solid prices. Thank you i appreciate you

SABATINO: U can come by a little later if u want I'll work on getting it for u

SABATINO: When did u want to come down for it I can prob get it soon but I have to go to pompano I could meet u in pompano if u want

CD: Hi, i just tried calling you and it went straight to voice mail. I had a busy day, im exhausted. If its convenient for you I can come to your place between 12 -1pm tomorrow please let me know and thank you

---

[2] I have replaced the name of the CD with asterisks in order to protect his identity for his safety and other investigative reasons.

9

June 21, 2023

CD: Hi, around noon time i will be around sunrise let me know if i can come to your place or you want to meet somewhere else. I just dont want to drive back to ******[3] and then drive again. Let me know. Thanks.

SABATINO: Yes that should work. Just call when u on sunrise.

CD: Will do

16. I understood these messages as follows: The CD contacted SABATINO from a new telephone number and identified him to SABATINO. The CD asked when he could purchase a pound of crystal methamphetamine from SABATINO ("Let me know when i can pick-up on Lb"). SABATINO agreed to work on getting the crystal methamphetamine ("I'll work on getting it for u") and initially requested the CD come to his residence to conduct the transaction ("U can come by a little later if u want"). Then SABATINO offered to meet the CD if helpful or necessary to conduct the transaction ("I could meet u in pompano if u want"). The CD postponed the transaction to the following day per law enforcement direction. The next day, the CD inquired about where they could conduct the transaction. SABATINO asked the CD to call him once the CD was in Fort Lauderdale ("on Sunrise [Blvd]")

17. On June 21, 2023, the CD called SABATINO and indicated that he was in the Broward County area. During the call, SABATINO requested the CD come to his residence. Agents met with the CD, equipped the CD with a covert audio/video recording device, searched

---

[3] I have replaced this location with asterisks in order to protect the identity of the CD for his safety and other investigative reasons.

10

the CD and his vehicle for bulk currency, illegal drugs, and firearms (all with negative results), provided the CD with $3,000 United States Currency of DEA Official Advanced Funds and then followed the CD to SABATINO's residence.

18. Almost immediately after the CD placed the call to SABATINO, surveillance units observed SABATINO exit his residence and knock, sometimes pounding, on the door of another apartment on the fifth floor of the same building. After no one answered the door, SABATINO went to the elevator, went downstairs, and subsequently entered his Nissan pick-up truck. Law enforcement followed SABATINO's Nissan truck. It made an illegal U-turn at an intersection and then made a loop around the area before it returned to his apartment building and parked. SABATINO did not make any stops (other than those due to traffic signs or signals) or exit the vehicle anywhere along the way. Once back at this building, SABATINO exited his vehicle and returned to the fifth floor of his building. Once on the fifth floor, SABATINO knocked on the door of the other apartment again. The door was answered, and he entered the other apartment. It should be noted that SABATINO was observed in possession of small fanny pack or satchel every time units observed him on this date.

19. While the CD was in route to SABATINO's residence, SABATINO sent the CD two messages that read, "Call me before u come up pls he is dropping it off now" and "How far are u?" SABATINO was inside of the other apartment when these messages were sent to the CD.

20. Once at SABATINO's residence, surveillance units observed the CD and the SABATINO's residence from several vantage points during the operation. The CD knocked on the SABATINO's door and no one answered. The CD returned to his vehicle. Around the same time the CD returned to his vehicle, SABATINO exited the other apartment on the fifth floor and entered SABATINO's residence.

11

21. Once inside his vehicle again, the CD called SABATINO. SABATINO requested the CD come back upstairs and indicated they just missed each other. The CD returned to the SABATINO's residence and entered as the door was barely cracked open. Once the CD was inside the residence, SABATINO sat in a chair, reached down, and then provided the CD with several Ziploc style plastic bags that contained crystal methamphetamine. The CD asked if he needed to "wash" the crystal methamphetamine and SABATINO stated, "this stuff doesn't seem too bad to me." The CD provided SABATINO the $3,000 of United States Currency. They continued to discuss the quality of the product. The CD then asked SABATINO how he has been doing at a casino. SABATINO then provided the CD with dates and amounts of his winning, which SABATINO purported to come from Internal Revenue Service Forms "W-2." I know from my training and experience both with the DEA and from when I was employed as a Revenue Officer with the Internal Revenue Service, that casinos provide gamblers with Internal Revenue Service Form W-2G to report gambling winnings over certain thresholds. I believe the Form W-2G is what SABATINO referred to. Later in the conversation about gambling, SABATINO stated, "I'm like ready to quit this and make this my full time job. Seriously cause I, well the good thing about this is I can show income now. This is my excuse from where I'm getting money from." He then added, "I gotta pay taxes on it still but that's alright, not a big deal. That helps legitimize a lot of things for me so its-[interrupted]." I understood those statements to mean the following: SABATINO was ready to quit illegal drug dealing ("quit this") in order to start gambling ("make this my full time job"). SABATINO preferred to make money from gambling because, at least in part, the winnings from the casino and the IRS Forms W-2G helped him to show legitimate income. I know from my training and experience, that drug traffickers often do not report the income or profit from their illegal drug sales to the Internal Revenue Service. Based

12

on my training and experience, I suspect that SABATINO has little legitimate income and as such does not have records of such to report to the Internal Revenue Service and/or financial institutions if necessary. I suspect his primary source of income is drug trafficking.

22. Shortly after, the CD left the residence, returned to his vehicle carrying a white plastic bag, and departed from the area followed by me and a Task Force Officer. The Task Force Officer and I met the CD at another location and retrieved the plastic bag which contained the crystal methamphetamine. We then searched the CD and his vehicle for bulk currency, illegal drugs, and firearms, with negative results. Law enforcement transported the crystal methamphetamine to the DEA West Palm Beach District Office, field tested it with a positive result for the presence of methamphetamine and shipped it to the DEA Southeast Laboratory for analysis. The laboratory has since confirmed the substance purchased was 433.5 grams ($\pm$ 0.2 grams) of Methamphetamine Hydrochloride with a purity of 100% ($\pm$ 6%).

## Cooperating Defendant Credibility

23. A few weeks after the CD began cooperating, local law enforcement obtained evidence during a trash search that indicates the CD may have violated the terms of his agreement to cooperate and as such calls into question the credibility of the CD. It should be noted that DEA agents and Task Force Officers were able to corroborate a significant amount of information provided by the CD. Further, agents believe that the information the CD provided about SABATINO is credible as a significant amount of that information has been corroborated by DEA as described above. It should also be noted that local law enforcement obtained the evidence from the trash search approximately five days after the CD conducted the controlled purchase from SABATINO discussed above.

13

## CONCLUSION

24. Based on the foregoing, I submit that there is probable cause to believe that on June 21, 2023, Michael Anthony SABATINO did commit the criminal offense of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B)(viii).

FURTHER AFFIANT SAYETH NAUGHT.

_____
JESSE RICKS
SPECIAL AGENT
DRUG ENFORCEMENT ADMINSTRATION

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time this **13th** day of July 2023.

_____
HONORABLE JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE

14